UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC AUSTON KINTZER, | ) No. ED CV 16-0279 AS |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

### I. PROCEEDINGS

On February 5, 2010, Plaintiff Eric Auston Kintzer ("Plaintiff") applied for disability insurance benefits and supplemental security income alleging a disabling condition beginning July 22, 2009. (AR 106-112). On August 11, 2011, Administrative Law Judge ("ALJ") Milan M. Dostal examined the records and heard testimony from Plaintiff and vocational expert ("V.E.") Lewis Moss. (AR 49-83). On October 3, 2011, ALJ Dostal denied Plaintiff benefits. (AR 11-18). The Appeals Council denied review of ALJ Dostal's decision. (AR 1-3).

On August 10, 2013, Plaintiff lodged a Complaint in this Court seeking review of ALJ Dostal's decision. (See Kintzer v. Colvin, EDCV 13-1411 AN, Docket Entry No. 1). On January 8, 2014, the Court approved the parties' stipulation to voluntarily remand the case for further administrative proceedings. (Kintzer v. Colvin, EDCV 13-1411 AN, Docket Entry Nos. 14, 16, 17). Upon remand, the Appeals Council assigned the case to a different ALJ for further development of the record. (AR 354-55).

On May 5, 2015, ALJ John Kays examined the records and heard testimony from Plaintiff and V.E. Alan Boroskin. (AR 290-313). On September 8, 2015, ALJ Kays heard further testimony from Plaintiff, V.E. Boroskin, and medical expert ("M.E.") John Morse. (AR 314-331). On October 8, 2015, ALJ Kays issued a partially favorable decision, ruling that Plaintiff was not disabled prior to his fifty-fifth birthday on June 26, 2014, but was disabled from that date until the date of ALJ Kays's order. (AR 276-85). The Appeals Council did not review ALJ Kays's order, and the order therefore became the final decision of the Agency. (Joint Stip. at 4); see also 20 C.F.R. § 404.984, § 416.1484.

On February 15, 2016, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) alleging that the Social Security Administration erred to the extent that it denied benefits for the entire alleged disability period. (Docket Entry No. 1). On June 20, 2016, Defendant filed an Answer to the Complaint, (Docket Entry No. 14), and the Certified Administrative Record ("AR"), (Docket Entry No. 15). The parties have consented to proceed before a United States

Magistrate Judge. (Docket Entry Nos. 11, 12). On August 22, 2016, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 16).

## II. SUMMARY OF ALJ KAYS'S DECISION

ALJ Kays applied the five-step process in evaluating Plaintiff's case. (AR 277-78). At step one, ALJ Kays determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date. (AR 278). At step two, ALJ Kays found that Plaintiff's severe impairments included insulin-dependent diabetes mellitus, hypertension, and diffuse arthralgias but no arthritis or other inflammatory disease. (AR 278). At step three, ALJ Kays found that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 279).

Before proceeding to step four, ALJ Kays found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b). (AR 279). ALJ Kays characterized Plaintiff's additional limitations as: "lift/carry 20 pounds occasionally and 10 pounds frequently; sit six hours in an eight-hour workday; stand/walk six hours in an eight-hour workday; push/pull unlimited other than shown for lift and carry; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; and avoid concentrated exposure to extreme cold and extreme heat and hazards (machinery, heights, etc.)." (AR

279). In making his RFC finding, ALJ Kays ruled that Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (AR 280).

At step four, ALJ Kays determined that Plaintiff was unable to perform any past relevant work. (AR 283). At step five, ALJ Kays first determined that, prior to Plaintiff's fifty-fifth birthday on June 26, 2014, Plaintiff was an "individual closely approaching advanced age," but, on and after that date, he was an "individual of advanced age" within the meaning of 20 C.F.R. § 404.1563 and § 416.963. (AR 283). ALJ Kays then applied the Medical-Vocational Guidelines appearing in 20 C.F.R. Pt. 404, Subpt. P, App. 2, ("the Grids") and concluded that, prior to June 26, 2014, Plaintiff could have adjusted to other work, but after that date there were no jobs existing in significant numbers in the national economy that Plaintiff could have performed. (AR 283-84). In making this finding, ALJ Kays concluded that Plaintiff's non-exertional limitations "had little or no effect on the occupational base of unskilled light work." (AR 284). ALJ Kays therefore determined that Plaintiff was not disabled within the meaning of the Social Security Act before June 26, 2014, but he became disabled on that date and the disability continued through the date of ALJ Kays's decision. (AR 284-85).

\\
\\
\\

### III. STANDARD OF REVIEW

This court reviews the Administration's decision to determine if the decision is free of legal error and supported by substantial evidence. See Brewes v. Commissioner of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

### IV. PLAINTIFF'S CONTENTIONS

Plaintiff raises two grounds for relief. First, Plaintiff claims that ALJ Kays failed to provide clear and convincing reasons for rejecting his testimony as not fully credible. (Joint Stip. at 5-10). Second, Plaintiff claims that ALJ Kays erred at step five by failing to (1) provide substantial evidence for the conclusion that Plaintiff's non-exertional limitations did not meaningfully limit the work available to Plaintiff; and (2) properly account for Plaintiff's limited literacy. (Id. at 15-17).

**V. DISCUSSION**

After reviewing the record, the Court finds that ALJ Kays did not materially err in evaluating Plaintiff's case.

**A. The ALJ Did Not Materially Err In Rejecting Plaintiff's Excess Pain Testimony**

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of his subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 806 F.3d 487, 492-93 (9th Cir. 2015) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)). In this case, because there is no evidence of malingering, the "clear and convincing reasons" standard applies.

During supplemental hearings, Plaintiff testified that he had not taken insulin regularly because it had to be kept cold, which he was unable to do because he was homeless. (See AR 298). Plaintiff further testified that he was taking his insulin regularly at the time of the hearing because he was staying with family and was able

to keep his insulin cold. (AR 299-300). Plaintiff reported that there was never a time when his diabetes had not caused sores on his feet, and he did not know why his disability had gotten worse in 2009, i.e., around the time of the alleged onset date. (AR 302). Plaintiff testified that he would be unable to perform work that would require him to stand at a bench or desk for eight hours. (AR 303). Plaintiff also testified that his diabetes caused vision problems. (AR 305-06). Plaintiff claimed that, at some point during the five years prior to his testimony, he owned and lived in a car. (AR 329-30).

On May 20, 2015, Plaintiff filed a post-hearing brief addressing his homelessness. (AR 492-93). Therein, Plaintiff reiterated that he had been "essentially homeless" during "most of the duration of this claim." (AR 492). Plaintiff referenced instances in April 2012 and April 2013 when his homelessness was substantiated in medical records. (AR 492). Plaintiff claimed that, at various times since 2009, he had been homeless or unable to obtain transportation or pay money necessary to visit the doctor or obtain medications. (AR 493).

ALJ Kays evaluated Plaintiff's credibility in the following excerpt:

> After careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not

7

entirely credible for the reasons explained in this decision.

One factor undermining [Plaintiff's] credibility is that the severity of his allegations is not supported by the objective medical evidence. [. . .]

The record also reflects periods of noncompliance with medical advice that in turn further undermine [Plaintiff's] credibility. A failure to follow treatment regimen is properly considered in the credibility assessment. [Plaintiff] has medical conditions that respond to compliance with treatment. [Plaintiff] had not been compliant with his insulin resulting in periods of exacerbation due to not taking medication. The treatment records show [Plaintiff] failed to follow treatment recommendations. [. . .] [Plaintiff's] hyperglycemia resolved with treatment. This demonstrates a possible unwillingness to do that, [sic] which is necessary to improve his condition. It is also noted that he lives in penury and homelessness and may have difficulty seeing doctors or even making appointments without transportation or even a phone to schedule them.

I note additional inconsistencies in the record that further undermine [Plaintiff's] credibility. [Plaintiff] did not stop working because of his medical condition but because of lack of work in November 2008. Although

> [Plaintiff] has [diabetes] and hypertension, there is no evidence of end organ damage or abnormalities. Although [Plaintiff] testified that he could not see well, his visual acuity in October 2014 was 20/40 and 20/70. There was no diabetic retinopathy found. His visual acuity in November 2014, was 20/50 both eyes, without glasses. Although [Plaintiff] complained of neuropathy and numbness in his feet, the examination in November 2014, noted normal gait, good motor strength, and intact sensation in upper and lower extremities. There were no neurological deficits. In August 2014, [Plaintiff] presented to the emergency room due to complaint of whole body pain. He reported being compliant with medications, and then later admitted that he was missing several days of insulin. Therefore, I find that these inconsistencies further diminish [Plaintiff's] credibility.

(AR 280-82 (citations omitted)).

Plaintiff claims that ALJ Kays erred in rejecting his subjective complaints as not fully credible. (Joint Stip. at 5-10). Specifically, Plaintiff argues that the "inconsistencies" identified by ALJ Kays were not "legitimate inconsistenc[ies]," (id. at 6), Plaintiff's failure to comply with his medication regimen was due to his homelessness and poverty, (id. at 6-8), and, given these deficiencies, ALJ Kays was not permitted to reject Plaintiff's complaints based on insufficient objective medical support, (id. at 9).

Preliminarily, the Court agrees that, because several months passed between November 2008, when Plaintiff stopped working (for reasons unrelated to his disability), and his alleged onset date of July 22, 2009, the fact that Plaintiff left his most recent job for reasons other than disability does not meaningfully undermine his credibility.  See, e.g., Quezada v. Colvin, 2013 WL 5743568 at *3 (C.D. Cal. 2013) (adverse credibility finding unwarranted where sixteen months passed between Plaintiff's termination from her last job and alleged onset date); McGowan v. Astrue, 2012 WL 5390337 at *5 (W.D. Wash. 2012) (same finding for gap of over a year); Shehan v. Astrue, 2009 WL 2524573 at *3 (C.D. Cal. 2009) (same finding for gap of over a year); see also Bruton v. Massanari, 268 F.3d 824, 826, 828 (9th Cir. 2001) (adverse credibility finding warranted where termination date and alleged onset date were identical).

The Court is more skeptical of Plaintiff's other contentions. An ALJ may properly rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" to discredit a claimant's subjective symptom testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks and citation omitted).  However, an ALJ must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. SSR 96-07p, 1996 WL 374186, at *7.

As Plaintiff correctly notes, a claimant's subjective complaints may not be rejected for lack of treatment where the record establishes that the claimant cannot afford the treatment. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1296-97 (9th Cir. 1999). In this case, however, ALJ Kays expressly noted both that Plaintiff's failure to take medication not only demonstrated a "possible unwillingness" to take steps to improve his condition, but also showed that Plaintiff "lives in penury and homelessness and may have difficulty seeing doctors or even making appointments without transportation or even a phone to schedule them." (AR 282). It therefore appears that, after evaluating Plaintiff's testimony and treatment history, ALJ Kays determined that although Plaintiff's failure to seek treatment was partially attributable to his homelessness and poverty, it evinced Plaintiff's reluctance to take steps necessary to control his disabilities. This ruling is consistent with record evidence that Plaintiff's compliance was mixed even when he had access to medication. (See, e.g., AR 240 (Plaintiff did not check his blood glucose and did not know how much insulin he had injected)).

Although Plaintiff consistently maintained that homelessness and poverty were the cause of his failure to follow a treatment plan, (Joint Stip. at 7-8), Plaintiff has not established that ALJ Kays was required to credit only that explanation in light of Plaintiff's treatment history. Instead, Plaintiff asks this Court to second-guess ALJ Kays's evaluation of the evidence. The Court, however, must defer to ALJ Kays. See Robbins, 466 F.3d at 882; see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ may engage in

ordinary techniques of credibility evaluation, including observation of inconsistencies in the claimant's testimony); Batson v. Comm'r of Soc. Sec'y Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (ALJ may make reasonable inferences from the evidence).

Because ALJ Kays provided at least one legitimate reason for rejecting Plaintiff's testimony, ALJ Kays was also entitled to consider the lack of objective medical evidence in support of Plaintiff's alleged degree of impairment. Burch, 400 F.3d at 681 (the ALJ may consider lack of medical evidence as "a factor" in discounting pain testimony). Because ALJ Kays provided legitimate reasons for discrediting Plaintiff's "excess pain" testimony, the Court cannot conclude that ALJ Kays "arbitrarily discredit[ed]" this testimony. Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1163 (9th Cir. 2008) (this standard applies even if some of an ALJ's grounds for discrediting a claimant's testimony were improper).

**B.  The ALJ Did Not Materially Err At Step Five**

At step five of the sequential evaluation process, the burden shifts to the Commissioner to show that "the claimant can perform a significant number of other jobs in the national economy," taking into consideration a claimant's RFC, age, education and work experience. Hoopai v. Astrue, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (quoting Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002)). The Commissioner can show that there are a significant number of other jobs in the national economy that the claimant can perform by relying

upon the testimony of a V.E. or by using the Grids. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101 (9th Cir. 1999) (citation omitted). The Grids "consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." <u>Hoopai</u>, 499 F.3d at 1075 (alteration in original) (quoting <u>Heckler v. Campbell</u>, 461 U.S. 458, 461-62 (1983)).

Where a claimant's qualifications correspond to the job requirements indicated by the Grids, the Grids "direct a conclusion as to whether work exists that the claimant could perform." <u>Id.</u> (quoting <u>Heckler</u>, 461 U.S. at 462). An ALJ can use the Grids when a claimant alleges a non-exertional limitation, but "the [G]rids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." <u>Id.</u> (quoting <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1998)).

However, when non-exertional limitations exist that are not sufficiently severe to limit the claimant's range of work, reliance on the Grids is appropriate. <u>See</u> <u>Hoopai</u>, 499 F.3d at 1076 (mild or moderate depression not sufficiently severe to preclude use of Grids); <u>Razey v. Heckler</u>, 785 F.2d 1426, 1430 (9th Cir.), <u>modified</u>, 794 F.2d 1348 (1986) (use of Grids acceptable where limitations from claimant's "generalized anxiety disorder" did not significantly affect the range of sedentary work otherwise available); <u>Angulo v. Colvin</u>, 577 F. App'x 686, 687 (9th Cir. 2014) (claimant's postural and environmental limitations were not sufficiently severe to prevent

reliance on Grids); Landa v. Astrue, 283 F. App'x 556, 558 (9th Cir. 2008) (claimant's depression, which did not prevent claimant from housework, personal care, and shopping, was not sufficiently severe to prevent reliance on Grids).

ALJ Kays limited Plaintiff to light work with the further restrictions that Plaintiff was unable to climb ladders, ropes, and scaffolds; was limited to "occasional[]" climbing of ramps or stairs; was limited to "frequent[]" balancing, stooping, kneeling, crouching, or crawling; and was required to avoid concentrated exposure to extreme hazards such as machinery and heights. (AR 279). Plaintiff contends that ALJ Kays erred in concluding that Plaintiff's non-exertional limitations did not meaningfully limit the work available to Plaintiff. (Joint Stip. at 16). Plaintiff also claims that ALJ Kays erred in failing to include literacy limitations in the RFC and in applying the Grids. (Id. at 17).

In an undated Adult Disability Report, Plaintiff reported that he had completed the twelfth grade with no special education classes, could "read and understand English," and could write "more than [his] name" in English. (AR 132, 134). During the first supplemental hearing, Plaintiff's attorney argued that Plaintiff did not know how to read or write, "other than probably very, very basic words." (AR 294). Plaintiff testified that he had "almost" completed high school, but his wrestling coach "got [him] all of [his] grades." (AR 306). Plaintiff stated that he had completed an audio exam to get a driver's license and would have difficulty reading a grocery list, although he recognized the words "milk" and "eggs." (AR 306).

During both supplemental hearings, ALJ Kays twice asked V.E. Boroskin whether a hypothetical individual whose limitations included illiteracy would be able to perform Plaintiff's past work, although this limitation was omitted from a third hypothetical. (AR 311, 326).

Plaintiff's argument regarding his non-exertional limitations is conclusory and is largely belied by Agency rulings. See SSR 83-14 (1983) (light work generally limits a claimant to "occasional bending of the stooping type" and "there are nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base. Examples are inability to ascend or descend scaffolding, poles, and ropes; inability to crawl on hands and knees; and inability to use the finger tips to sense the temperature or texture of an object. Environmental restrictions, such as the need to avoid exposure to feathers, would also not significantly affect the potential unskilled light occupational base."); SSR 85-15 (1985) (limitation to occasional stooping leaves sedentary and light occupational base "virtually intact," and limitations on ability to crawl or kneel are "of little significance in the broad world or work."). The Court cannot conclude that ALJ Kays materially erred in failing to erode the occupational base due to Plaintiff's non-exertional limitations.

With respect to Plaintiff's alleged literacy limitations, Plaintiff's statements about his literacy were inconsistent, and the precise scope of his literacy was unproven. (See AR 132, 134, 306). Plaintiff has therefore not demonstrated that ALJ Kays was required

to include literacy limitations in the RFC or his step five analysis. Although ALJ Kays might have more clearly explained his reasons for not including literacy limitations in his RFC finding, the Court concludes that any such failure was harmless error. Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) ("[H]armless error principles apply in the Social Security . . . context.")). The inclusion of literacy limitations in ALJ Kays's hypotheticals to the V.E. is also not dispositive. See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (ALJ is not bound to accept restrictions set forth in a hypothetical question if the restrictions are unsupported by substantial evidence).

## VI.   CONCLUSION

For the foregoing reasons, the decision of the Administrative Law Judge is AFFIRMED.  LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 3, 2016

>                   _____/s/_____
>                        ALKA SAGAR
>              UNITED STATES MAGISTRATE JUDGE